George P. BAKER et al., Appellees,

v.

RISS & COMPANY, Inc., Appellant.

No. 71–1025.

United States Court of Appeals,
Eighth Circuit.

June 29, 1971.

Rodger J. Walsh, Kansas City, Mo., for appellant.

Bruce C. Houdek, James & McCanse, Kansas City, Mo., for appellees.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The Pennsylvania Central Railroad Company brought this action against Riss & Company, Inc. (hereinafter Riss) for storage and detention charges incurred in connection with joint transportation of freight in the amount of $1,848.06. By orders entered by the United States District Court for the Eastern District of Pennsylvania pursuant to § 77 of the Bankruptcy Act, 11 U.S.C.A. §

205, George P. Baker, et al., have been appointed and have qualified as trustees and as such are authorized to manage and operate the plaintiff railroad. Such trustees have by order of this court been substituted as plaintiff-appellee. For convenience, we shall refer to the plaintiff railroad and its successor trustees as Penn.

Riss is a motor carrier regulated by the Interstate Commerce Commission (ICC). Riss had authority to transport by truck the merchandise involved in this action from its point of origin to destination and had tariffs on file with the ICC covering such transportation. In the transactions here pertinent, Riss collected its full tariff charges from the shipper for the entire trip. It utilized Penn for piggyback services under contract between Penn and Riss providing for joint transportation services and for a division of the Riss tariffs between Riss and Penn. The present controversy arises over Penn's right to collect storage and detention charges provided for in the division agreement entered into between Penn and Riss.

The trial court held that the doctrine of primary jurisdiction of the ICC should be invoked with respect to the issue of whether the trucker's tariff carried with it the right of Penn to make storage and detention charges without having an appropriate tariff of its own on file. The trial court in its opinion states:

"Item 40 [of the division agreement] containing the rate sought to be collected by plaintiff for storage charges is admittedly not on file with the ICC. Unless Item 10(A), *supra*, [trucker's tariff] can be construed to make Item 40 effective without such filing, as it cannot be under ordinary rules of judicial construction, then plaintiff's complaint should be dismissed. It is only in liberally viewing the parties' contentions that Item 10(A) does indeed permit plaintiff to make storage charges without having an appropriate tariff on file with the ICC that this Court has concluded that, construed in the light of the expertise of the ICC, Item 10(A) may dictate this result. Apart from such expertise, certainly, no such construction can exist. The doctrine of 'primary jurisdiction' of the ICC should thus be invoked as the alternative to dismissing plaintiff's complaint. * * *"

The primary issue raised upon this appeal is whether the court erred in submitting the issue involved in this case to the ICC under the primary jurisdiction doctrine. For reasons hereinafter stated, we hold the trial court lacked subject matter jurisdiction and that this action should be dismissed for want of jurisdiction.

Considerable confusion was created in the trial court by Penn's contention in its complaint that its claim is based on a tariff on file with the ICC. No applicable railroad tariff was specifically pleaded although the trial court made repeated efforts to require Penn to set out the tariff it relied upon. Both parties now agree that there is no Penn tariff on file which authorizes or requires the collection of storage and detention charges here claimed. The only provision for storage charges is to be found in the agreement for division of joint transportation charges entered into between Penn and Riss. It is agreed that such division agreements are not tariffs and are not treated as such by the ICC.

Riss has on file a tariff which governs the rate to be charged its shippers for transportation from the point of origin to destination. Item 10 relating to substitution of rail carrier service reads:

"SUBSTITUTION OF SERVICE.

"(A) Unless the shipper directs that the rail carrier service shall not be performed the motor carriers parties hereto may, at their option, substitute rail service between the points and via the rail carriers shown herein, for their actually available service via highways for which such motor carriers have lawful operating rights as common carriers via motor vehicle."

The joint truck-rail service here provided for under Plan I described in American Trucking Ass'ns v. Atchison, T. & S.F.R. Co., 387 U.S. 397, 403, 87 S. Ct. 1608, 1612, 18 L.Ed.2d 847, is as follows:

"Plan I (Joint Intermodal):

Railroad movement of trailers or containers of motor common carriers, with the shipment moving on one bill of lading and billing being done by the trucker. Traffic moves under rates in regular motor carrier tariffs, and the railroad's compensation is arrived at by negotiation between the two carriers."

The ICC in Substituted Service—Piggyback, 322 I.C.C. 302, 349, has approved Plan I Piggyback Service, stating:

"In summary, we conclude, as did the examiners and the Commission decisions prior to the NATA case, that when a motor common carrier participates in plan I TOFC operations, paying the railroad compensation other than set forth in the railroad's regularly published tariff, the motor carrier's status is that of a connecting carrier in a joint service provided voluntarily by the participating rail and motor common carriers; and that plan I TOFC operations thus constitute a valid through-route and joint-rate arrangement within the contemplation of Section 216(c) of the act. A fact which we have referred to before in this report is the general lack of opposition to the provisions of a through joint inter-Modal TOFC service under what are known generally as plan V tariffs and arrangements. Plan I and plan V, however, share in common the important features of a through-route and joint-rate arrangement; both entail the voluntary cooperation and agreement of the participating carriers; both involve the *payment by the shipper of a single through rate which is divided among the carrier participants on a negotiated basis;* and both may involve the rendition of joint service between points the motor carrier is authorized to serve in all-highway service." (Emphasis supplied.)

We are of the view that the present litigation arises solely out of the contractual agreement entered into between Penn and Riss for the division of the joint transportation charge collected by Riss under its motor vehicle transportation tariff on file and that no problem of statute or tariff interpretation is presented.

■■■ Jurisdiction is based upon 28 U.S.C.A. § 1337 conferring jurisdiction of a civil action arising out of any act of Congress regulating commerce. Neither party has challenged the jurisdiction of the trial court or of this court. On the contrary, both parties assert jurisdiction exists. Subject matter jurisdiction cannot be conferred by consent. Federal courts have only such jurisdiction as is conferred upon them by Congress. It is our duty to satisfy ourselves as to the jurisdiction of the trial court and our own jurisdiction, whether or not the jurisdictional issue is raised. If subject matter jurisdiction is lacking in the trial court, our jurisdiction on review is limited to correcting the error of the trial court in entertaining jurisdiction. Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 8 Cir., 337 F.2d 24, 27; Kern v. Standard Oil Co., 8 Cir., 228 F.2d 699, 701.

■ The federal right relied upon for jurisdiction must be a paramount and not a collateral issue. Gully v. First National Bank, 299 U.S. 109, 112, 57 S. Ct. 96, 81 L.Ed. 70; Chicago and N. W. Ry. Co. v. Toledo, P. & W. R. Co., 7 Cir., 324 F.2d 936, 937–938; State Auto Ins. Ass'n v. Parry, 8 Cir., 123 F.2d 243.

■■ In our present case, plaintiff's cause of action rests solely on the divisional agreement, not upon any interpretation of a statute regulating commerce or any tariff or regulation of the ICC. As noted in the italicized portion of the quotation from Substituted Service—Piggyback, the single through rate paid by the shipper is to be divided among the carriers on a basis negotiated by the participating parties. The divisional

agreement was the result of such nego-
tiations and the contract determines the
basis of division between Penn and Riss.
28 U.S.C.A. § 1337 confers no jurisdic-
tion of private contract actions such as
here involved. We hold the trial court
lacked subject matter jurisdiction.

Riss also complains of the action
of the trial court in dismissing its coun-
terclaim for alleged damage to its trail-
ers and contents while being transported
by Penn. It is not alleged that the dam-
ages occurred in the transportation upon
which Penn's complaint is based. The
counterclaim was dismissed without
prejudice with the right to renew when
and if Penn's claim came before the
court on the merits. The dismissal was
on the ground that the counterclaim was
filed more than twenty days after serv-
ice of the original answer and that leave
of court was not requested or obtained
as required by Rule 15(a) Fed.R.Civ.P.
The court did not abuse its discretion in
so ruling.

The judgment entered is vacated.
The case is remanded to the trial court
with direction to dismiss the complaint
for want of jurisdiction.