James **CALVELLO**, Plaintiff,

v.

**YANKTON SIOUX TRIBE**, Defendant.

No. Civ. 94–4266.

United States District Court,
D. South Dakota,
Southern Division.

Sept. 1, 1995.

John E. Burke, Sioux Falls, SD, A. Russell Janklow, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, for Plaintiff.

James G. Abourezk, Abourezk Law Offices, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Plaintiff James Calvello, a former manager of the Fort Randall Casino operated by the defendant Yankton Sioux Tribe, has filed an application for confirmation and enforcement of an arbitrator's award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9. The Yankton Sioux Tribe moves to dismiss the application on the ground that the Tribe enjoys sovereign immunity and may not be required to answer in federal court absent an express waiver of that immunity. Having carefully considered the motion, briefs, supporting documents, and oral arguments of counsel, the Court grants defendant's motion to dismiss.

## I. Background

The decision of the federal arbitrator, which is attached to Calvello's application for confirmation, reflects that Gambler's Supply executed a management contract with the Tribe to operate the Fort Randall Casino. Gambler's Supply hired Calvello, a management consultant, to act as operating manager of the casino. The Tribe later paid off the contract with Gambler's Supply in the amount of approximately $1.4 million, ending the management contract.

The Tribe then continued to employ Calvello as casino manager. Calvello and Steve Cournoyer, referred to as former Tribal Chairman and actually the Chairman of the General Council, negotiated an employment contract which they both signed on November 24, 1992. The record contains only one page of this contract and not the entire document. (Doc. 2, Attach. A.) According to other documents in the record, the contract term of employment was a period of five years commencing retroactively on August 3, 1992, and terminating on August 2, 1997. The employment contract provided that Calvello would be paid a base salary of $50,000 per year, with a raise of $5,000 each successive year until his base pay reached $75,000 per year, unless total revenues for the casino fell 85 percent below the 12 months immediately preceding the date of the employment agreement. In addition to base salary, Calvello was entitled to a six-percent commission of the "net profits" as that term was specifically defined in the contract. The employment contract contained a clause that it could not be terminated by either party except for good cause, defined as gross dereliction of duty or loss of the gaming license. The contract provided that the Tribe would pay Calvello the sum of $250,000 for retirement, disability, or any termination of the employment agreement prior to its termination date.

On November 30, 1992, six days after Calvello and Cournoyer signed the contract, the Yankton Sioux Tribe's General Council held an emergency meeting. A motion to terminate Calvello's employment failed. Another motion to disapprove the employment contract succeeded. The Council directed the Tribe's Business and Claims Committee to renegotiate Calvello's contract. Later in the same meeting, a motion passed to remove Calvello as casino manager. He was advised to leave the casino immediately, as the Tribe

intended to advertise for a new manager, and he did so. In January 1993, Calvello attended a meeting of the General Council's Fact Finding Committee and asked if his employment had been terminated. He was told that his employment had not been terminated. Gary Montana, who was then acting as the Tribe's attorney, asked Calvello if he would stay on as casino manager for a lesser amount than that contained in the employment contract. Calvello told him he would consult his lawyer. Calvello later refused Montana's suggestion and elected to enforce the employment contract through the arbitration provision contained in section 11 of the contract. The Tribe's counsel participated in the federal arbitration proceeding.

Section 11 of Calvello's employment contract states in its entirety (emphasis added):

### ARBITRATION

Any differences, claims, or matters in dispute arising between the Employer and Employee out of or connected with this agreement shall first be submitted by them to arbitration by the American Arbitration Association or its successor and the determination of the American Arbitration Association or its successor shall be final and absolute. The arbitrator shall be governed by the then existing promulgated rules and regulations of the American Arbitration Association or its successor, and the pertinent provisions of law, relating to arbitration. *The decision of the arbitrator may be entered as a judgment only in federal court.* It is agreed that only a single arbitrator will be utilized.

Calvello and the Tribe's counsel mutually selected the arbitrator, Richard John Miller, through the administrative offices of the American Arbitration Association in Minneapolis. An arbitration hearing occurred on September 24, 1993, in Sioux Falls. Calvello appeared with counsel John Burke, and attorney James Abourezk appeared for the Tribe. The parties submitted evidence and argument, and Calvello submitted a post-hearing brief. The Tribe's attorney declined to file a brief.

In a decision handed down on January 7, 1994, the arbitrator determined that the Tribe terminated Calvello's employment without good cause, but that Calvello's employment contract with the Tribe was null and void and therefore unenforceable because it had not been approved by the Tribal General Council in accordance with Article I, Sections 1 and 2 of the Amended By-Laws of the Tribe. Nonetheless, the arbitrator held that Calvello could collect from the Tribe the six percent share of net profits for the time he served as operating manager because there was no dispute that the Tribal General Council had approved that separate provision at an August 28, 1992 meeting. The arbitrator calculated this amount to be $107,317 and, deducting the $52,000 Calvello received from the Tribe in profit-sharing upon his termination, the arbitrator found that the Tribe owed Calvello $55,317 for net profits.

The arbitrator further found that Calvello was entitled to recover damages under a quantum meruit theory because Calvello conferred valuable services upon the Tribe, turning a dismal casino operation into a thriving business. The arbitrator found that the Tribe would not have reaped the many benefits of the casino if it had not been for Calvello's efforts. The arbitrator awarded Calvello $83,760 in lost compensation for the period spanning the latter months of 1992 through June 1994; $5,000 to reimburse Calvello for a downpayment he made on a home at the direction of the Tribe and eventually lost; $2,000 to reimburse Calvello for the arbitration fee; and prejudgment interest at the applicable legal rate under South Dakota law.

The Tribe did not honor the arbitrator's decision. Calvello filed this application under the Federal Arbitration Act seeking federal court confirmation of the arbitration award and entry of judgment on the award. The Tribe moves to dismiss the application on the ground of sovereign immunity, and Calvello resists.

### II. Discussion

■ To permit this Court to confirm the arbitration award under 9 U.S.C. § 9, Calvello must demonstrate an independent ground for federal subject matter jurisdiction. *See*

*General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 969 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *GNS, Inc. v. Winnebago Tribe of Nebraska,* 866 F.Supp. 1185, 1189 (N.D.Iowa 1994); *Wisconsin Comm'r of Ins. v. California Reinsurance Management Corp.,* 819 F.Supp. 797, 799 (E.D.Wis.1993). *See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983) (noting same principle in dicta). The provisions of § 9 do not themselves confer subject matter jurisdiction on the federal court. *General Atomic Co.,* 655 F.2d at 969.

■ There is no basis for the assertion of diversity jurisdiction. "[A]vailable authority holds that Indian tribes are not citizens of any state for purposes of diversity jurisdiction." *Gaines v. Ski Apache,* 8 F.3d 726, 729 (10th Cir.1993) (citing *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974) and *Oneida Indian Nation v. Oneida County,* 464 F.2d 916, 922–23 (2d Cir.1972), *rev'd on other grounds,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)). Thus, Calvello may not sue the Tribe in federal court under diversity jurisdiction. *See Standing Rock Sioux Indian Tribe,* 505 F.2d at 1140.

■ Calvello asserts that the Court has federal question jurisdiction under 28 U.S.C. § 1331. Because the parties dispute whether Calvello's contract is a management contract under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2711, or an employment contract that is not covered by the IGRA, the Court finds that it has federal question jurisdiction. *See Tom's Amusement Co. v. Cuthbertson,* 816 F.Supp. 403, 406 (W.D.N.C.1993) (holding that interpretation of contractual provisions involving Indian gaming under IGRA involves federal question and that diversity jurisdiction existed between non-Indian parties).

■ The Court must next consider, however, the separate jurisdictional issue of whether Calvello's suit against the Tribe is barred by the doctrine of sovereign immunity. *See Black Hills Institute of Geological Research v. United States Dept. of Justice,* 967 F.2d 1237, 1240 n. 5 (8th Cir.1992) (ordering district court to determine on remand jurisdictional issue of whether Tribe had expressly waived sovereign immunity), *cert. denied,* —— U.S. ——, 115 S.Ct. 61, 130 L.Ed.2d 18 (1994). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (cited cases omitted). "This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress." *Id.* "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity must be unequivocally expressed and cannot be implied. *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677; *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 874 F.2d 550, 552 (8th Cir.1989) (holding that Tribe had expressly waived sovereign immunity in its corporate charter).

■ Whether and to what extent an arbitration clause in a contract constitutes a waiver of tribal sovereign immunity turns on the terms of that clause. *Pan American Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 418 (9th Cir.1989); *GNS, Inc.,* 866 F.Supp. at 1189. "*Santa Clara Pueblo* commands that waiver may only be found if the clause unequivocally and expressly indicates the [Tribe's] consent to waive its sovereign immunity." *Pan American Co.,* 884 F.2d at 418 (cited cases omitted).

■ In *Rosebud Sioux Tribe v. Val–U Constr. Co.,* 50 F.3d 560, 562 (8th Cir.1995), *petition for cert. filed,* 63 U.S.L.W. 3908 (U.S. June 14, 1995) (No. 94–2047), the Eighth Circuit considered an arbitration clause reading, "All questions of dispute under this Agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." The Rosebud Sioux Tribe argued that the clause did not operate as a waiver of its sovereign immunity. *Id.* The Eighth Circuit rejected that

argument, concluding "that this clause is a clear expression that the Tribe has waived its immunity with respect to claims under the contract." *Id.* Similarly, the Court finds that the arbitration clause in Calvello's contract, if a valid contract, is an unequivocal expression of the Tribe's waiver of sovereign immunity for disputes arising out of that contract and the Tribe's consent to confirmation of any arbitration award in federal court.[1]

■■■ The matter does not end there, however, for the Court must further consider whether Calvello's contract with the Tribe was a management contract subject to the approval provisions of 25 U.S.C. § 2711, or whether it was an employment contract unaffected by § 2711. Management contracts must be approved by the Chairman of the Indian Gaming Commission, who exercises the contract approval authority formerly vested in the Secretary of the Interior under 25 U.S.C. § 81. Calvello does not argue that his contract was a management contract, but even if it was, the contract was not approved by the General Council of the Tribe or by the Chairman of the Indian Gaming Commission pursuant to § 2711, and therefore, the contract is null and void. *See A.K. Management Co. v. San Manuel Band of Mission Indians,* 789 F.2d 785, 789 (9th Cir.1986) (holding under 25 U.S.C. § 81, prior to passage of IGRA, that waiver of sovereign immunity in contract is inoperable if contract is null and void for failure to obtain approval of Secretary of Interior). As a result, the Court is compelled to find that the waiver of sovereign immunity in the arbitration clause of Calvello's contract is inoperable. This outcome is not affected by the fact that the General Council orally agreed at its meeting in August 1992 to pay Calvello a six percent share of net profits from the casino operation. This oral agreement, if enforceable, would be enforceable in state court but not in federal court due to the lack of subject matter jurisdiction.

Relying on *Wisconsin Winnebago Business Committee v. Koberstein,* 636 F.Supp. 814, 815 (W.D.Wis.1986), Calvello construes the written agreement as a separate employment contract that is not subject to the approval provisions of § 2711. Calvello's reliance upon *Koberstein* is misplaced, because, while the district court there recognized a distinction between a management contract and a separate employment contract, the result of the case was that the court dismissed the cause of action based upon the null and void management contract and held that it lacked subject matter jurisdiction to construe the terms of the separate employment contract. Even if the Court were to hold that Calvello's contract with the Tribe is an employment contract not subject to § 2711, Calvello fails to identify a proper basis for this Court to exercise subject matter jurisdiction over what is essentially a state law breach of contract claim.

■■■ Calvello's remaining arguments are similarly unavailing. He argues that the Tribe expressly waived its sovereign immunity when it entered into the Tribal–State Gaming Compact with the State of South Dakota in 1991 and thereby drew a distinction between its governmental activities and its "proprietary" gaming activities. Calvello argues that, in the Tribal–State Gaming Compact, the Tribe agreed to allow certain civil cases arising out of gaming activities to be heard in state court, citing paragraph 6 of the Tribal–State Compact. (Doc. 8, Attach. # 3.)

■■■ The Court agrees with Calvello that the Tribe did waive its sovereign immunity for purposes of this suit when it agreed to a limited waiver of its sovereign immunity in the 1991 gaming compact with the State of South Dakota.[2] The Court expressly finds

---

1. The Court assumes that, if the contract contained a clause specifically reserving the Tribe's sovereign immunity, the Tribe would have presented that clause to the Court for consideration in support of the motion to dismiss. *See GNS, Inc.,* 866 F.Supp. at 1189 (noting that agreement contained clause expressly reserving Tribe's sovereign immunity).

2. The corollary is that a state's Eleventh Amendment immunity to suit under the Indian Gaming Regulatory Act appears to be abrogated by that Act and certainly is abrogated when the state engages in negotiating tribal-state compacts under the Act. *Cheyenne River Sioux Tribe v. State of South Dakota,* 3 F.3d 273, 281 (8th Cir.1993).

that the gaming compact applies here because this is a case "arising from transactions related to, or arising from, gaming conducted pursuant to this Compact." (Doc. 8, Attachment 3 at ¶ 6.) However, Calvello has filed suit against the Tribe in federal, not state court, and the limited waiver of sovereign immunity by the Tribe in paragraph 6 of the compact only allows for claims in state court.

Calvello next argues that the Tribe waived its sovereign immunity simply by engaging in gaming activities under federal statutory law. He argues that the applicable cases are those interpreting the IGRA, 25 U.S.C. § 2701–2721. Calvello submits that Congress eliminated the defense of tribal sovereign immunity with regard to these gaming activities. He suggests that any other interpretation of the IGRA would make such contracts a farce if the Tribe could assert sovereign immunity as a defense to any tribal obligation. (Doc. 8 at 6–7.) In support of this argument, Calvello cites *Ross v. Flandreau Santee Sioux Tribe*, 809 F.Supp. 738 (D.S.D.1992), *Rita, Inc. v. Flandreau Santee Sioux Tribe*, 798 F.Supp. 586 (D.S.D.1992), and *Maxam v. Lower Sioux Indian Community of Minn.*, 829 F.Supp. 277 (D.Minn.1993).

The Court believes that Calvello argues too broadly when he states that "the totality of cases involving the Indian Gaming Act and interpretation of agreements under that Act, hold that Tribes have waived sovereign immunity by engaging in all matters involving casino gaming, which includes employment, and also holds that the Federal District Courts have subject matter jurisdiction." (Doc. 8 at 11.) In *Ross*, members of the Flandreau Santee Sioux Tribe living outside of Moody County challenged the Tribe's distribution of per capita payments of casino profits only to those tribal members living within Moody County. *Ross*, 809 F.Supp. at 740–41. It appears that the plaintiffs sought equitable relief as well as monetary damages for past per capita distributions. *Id.* at 745. The Tribe moved for dismissal of the suit on the ground of sovereign immunity. District Judge John B. Jones of this District ruled, in regard to equitable relief, that "[e]ngaging in gaming pursuant to the IGRA constitutes an express waiver of sovereign immunity on the issue of compliance with the IGRA. To hold otherwise would make 25 U.S.C. § 2710(b)(3) [the per capita payment statute] a nullity." *Id.* While enforcing compliance with the IGRA, Judge Jones ruled that plaintiffs' claim for monetary damages failed because the Tribe was protected by sovereign immunity from a suit for damages. *Id.* at 745.

In *Rita, Inc.*, the casino management company for the Royal River Casino operated by the Flandreau Santee Sioux Tribe sought a temporary restraining order to prevent the Tribe from removing the company as manager of the casino. *Rita, Inc.*, 798 F.Supp. at 587. The district court found that it had federal question jurisdiction under the IGRA, but denied the request for injunctive relief because plaintiff failed to establish one of the essential factors required by *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). The district court did not discuss the sovereign immunity issue because the management company sought injunctive relief only.

In *Maxam*, tribal members brought suit against the Lower Sioux Indian Community of Minnesota, the Community Council and the Secretary of the Interior contending that the Community's refusal to make per capita payments to them violated the tribal constitution, the corporate charter and several federal statutes, including the IGRA. *Maxam*, 829 F.Supp. at 279. The district court considered only plaintiffs' motion for a preliminary injunction. *Id.* at 278. As in *Ross*, the Minnesota district court held that the Community, by engaging in gaming under the provisions of the IGRA, waived its sovereign immunity for the purpose of enforcement of the statutory requirements. *Id.* at 281. The court explicitly stated that it was not considering the plaintiffs' separate claims for monetary damages. *Id.* at 282 (citing concurrence by Justice Stevens in *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. at 516, 111 S.Ct. at 913 (tribe's sovereign immunity from actions for money damages "does not necessarily extend to actions seeking equitable relief.")). Contrary to Calvello's argument that these cases sweep away all vestiges of sovereign immunity where the Tribe engages in gaming activi-

ty under the IGRA, the Court finds that *Ross, Rita, Inc.,* and *Maxam* stand at most for the proposition that federal courts may find a waiver of tribal sovereign immunity for the purpose of enforcing the provisions of the IGRA where prospective injunctive relief, and not monetary relief, is sought.

 Finally, the Court rejects Calvello's argument that the voluntary participation of the Tribe's counsel in the federal arbitration proceeding and counsel's conduct in submitting joint exhibits at the arbitration proceeding is, without more, an express waiver of the Tribe's sovereign immunity as contemplated by *Santa Clara Pueblo. See American Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1379 (8th Cir.1985).

Although compelled by the law, the Court's decision in this case reaches an inequitable result. Plaintiff Calvello conferred valuable services upon the Tribe for which he did not receive adequate compensation. The Tribe's refusal to abide by the arbitration decision after its counsel participated fully in the entire proceeding from pre-hearing matters through the hearing shows a lack of good faith. This kind of action, although not prohibited by law, may well increase the cost and diminish the availability of qualified contractors to perform services desired by the Tribe. The Court does, however, recognize that it may not entertain this application for confirmation of the arbitration award without a legitimate basis for the exercise of federal subject matter jurisdiction. The Tribe's limited waiver of sovereign immunity in the Tribal–State Gaming Compact is not broad enough to cause federal subject matter jurisdiction to exist in this case. The dismissal of this action for lack of subject matter jurisdiction is without prejudice to the right of plaintiff to pursue an action in the state courts of South Dakota as may be contemplated by the applicable gaming compact between the Tribe and the State of South Dakota. Accordingly,

IT IS ORDERED that the Tribe's motion to dismiss is granted. (Doc. 6.)

IT IS FURTHER ORDERED that the Application For Confirmation And Enforcement Of Arbitrator's Award is denied. (Doc. 2.)

## JUDGMENT

In accordance with the Court's Memorandum Opinion and Order filed this date with the Clerk,

IT IS ORDERED, ADJUDGED, and DECREED that judgment is entered for defendant and against plaintiff without prejudice to any state court remedy plaintiff may have against defendant.