Emilia ROMANELLA

v.

Richard HAYWARD, Richard Libby & The Mashantucket Pequot Tribal Nation.

No. 3:95CV726(AHN).

United States District Court, D. Connecticut.

Aug. 1, 1996.

Robert I. Reardon, Jr., Donald J. O'Brien, Angelo A. Ziotas, The Reardon Law Firm, P.C., New London, CT, for Plaintiff.

Elizabeth Conway, Brown, Jacobson, Tillinghast, Lahan and King, P.C., Norwich, CT, for Defendant.

## RULING ON DEFENDANTS' MOTION TO DISMISS

NEVAS, District Judge.

In this diversity action, plaintiff Emilia Romanella ("Romanella") asserts a negligence cause of action against the defendants, Richard Hayward ("Hayward"), Richard Libby ("Libby"), and the Mashantucket Pequot Tribal Nation (the "Tribe").

Currently before the court is the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.[1] The defendants also argue that the doctrine of tribal sovereign immunity bars this action and thus move pursuant to Rule 12(c) for judgment on the pleadings.

For the following reasons, the defendants' Motion to Dismiss [doc. # 16] is GRANTED and the action is DISMISSED in its entirety.

## I. STANDARD OF REVIEW

### A. Rule 12(b)(1)

In deciding a Rule 12(b)(1) motion, the court construes the complaint broadly and liberally in conformity with the principle

---

1. At oral argument, the court granted, absent objection, Romanella leave to file a Second Amended Complaint. Although the defendants motion to dismiss originally was directed at the plaintiff's Amended Complaint [doc. # 13], the filing of the Second Amended Complaint does not affect the arguments before the court and the court therefore will construe the defendants' motion to dismiss to be directed at the Second Amended Complaint.

set out in Rule 8(f), Fed.R.Civ.P., "but argumentative inferences favorable to the pleader will not be drawn." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 218–219 (1990 & Supp. 1991) (hereinafter "Wright & Miller"). The parties may use affidavits and other materials beyond the pleadings themselves to challenge or to support the court's subject matter jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir.1976), *cert. denied sub nom.,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979).

■ Lack of subject matter jurisdiction may be asserted at any time by the parties or by the court *sua sponte. See* Rules 12(b)(1) and 12(h)(3), Fed.R.Civ.P.; *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 588 F.2d 24, 27 (2d Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979); 5A Wright & Miller, § 1350, at 202.

### B. *Rule 12(c)*

■ "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rule 12(c), Fed.R.Civ.P. A court may enter a judgment on the pleadings where the material facts are undisputed and a judgment on the merits is possible merely by considering the pleadings' contents. *See Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). The legal standards governing the court's consideration of a Rule 12(c) motion are the same as those standards governing its consideration of a Rule 12(b)(6) motion to dismiss. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977). The court must accept as true the well-pleaded facts of the complaints and may

not dismiss the action unless the court is convinced that the plaintiff can prove no set of facts which would entitle him to relief. *See Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### *FACTS*

For the purpose of this motion, the court accepts the following factual allegations contained in the Second Amended Complaint [doc. # 25] as true.

Romanella, a Rhode Island citizen, was employed as a pit cashier at the Foxwoods Resort & Casino. (*See* Second Am.Compl. at 3, ¶ 2.) On March 1, 1994, she finished her work and took a shuttle bus from the casino on the reservation to a parking area located adjacent to the reservation in the Town of Ledyard. (*See id.* at 3, ¶¶ 1–2.) After getting off the bus in the parking lot, Romanella walked to her car. (*See id.* at 3–4, ¶ 3.) While walking, she slipped and fell "as a result of the accumulation of snow and/or ice upon the surface" of the parking lot. (*See id.* at 4, ¶ 3.) Romanella was injured as a result of her fall. (*See id.*)

Romanella alleges that the Mashantucket Tribe is a federally recognized tribe that owns reservation and non-reservation lands in Ledyard, Connecticut. (*See id.* at 1–2, ¶ 1.) Although the parking lot is not part of the reservation, the Tribe "own[s], operate[s], maintain[s], and control[s]" the parking lot. (*See id.* at 3, ¶ 1.)

Hayward and Libby are "members" of the Tribe and Connecticut citizens. (*See id.* at 2, ¶ 2.) Further, at the time of Romanella's accident, Hayward "was an officer" of the Tribe and "he and Libby were responsible for the maintenance" of the parking lot. (*Id.* at 3, ¶ 1.)

### II. *DISCUSSION*

#### A. *Subject Matter Jurisdiction*

Under 28 U.S.C. § 1332(a), a district court has jurisdiction over matters in which the amount in controversy exceeds $50,000 and which are between citizens of different states, between citizens of one state and citi-

zens of a foreign state, or in which a foreign state as a plaintiff sues a citizen of a state. 28 U.S.C. § 1332(a) (1988).

■ The defendants do not challenge whether Romanella has satisfied the amount in controversy requirement, and the court finds that she does. The court thus addresses the citizenship of the parties.

Romanella is a citizen of Rhode Island. As Tribe members residing in Connecticut, Hayward and Libby are citizens of Connecticut. *See Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 18 n. 10, 107 S.Ct. 971, 977 n. 10, 94 L.Ed.2d 10 (1987) (observing that under the Fourteenth Amendment native Americans are citizens of the states in which they reside); *Deere v. New York,* 22 F.2d 851, 852 (N.D.N.Y.1927) (holding that native American is citizen of the state in which he resides), *rev'd on other grounds, Deere v. St. Lawrence River Power Co.,* 32 F.2d 550 (2d Cir.1929). *See also* Conn.Gen.Stat. § 47–59(a) (stating that "all resident Indians ... are considered to be the full citizens of the State.") Accordingly, the court finds that Romanella has satisfied section 1332(a) as to Hayward and Libby.

As to the Tribe's citizenship, the Supreme Court long-ago held that an Indian tribe is not a foreign state. *See Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 17–18, 8 L.Ed. 25 (1831) (establishing that native American tribes were "domestic dependent nations"). Consequently, this court may exercise diversity jurisdiction over this action only if the Tribe is a citizen of Connecticut.[2]

The parties dispute whether the Tribe is a citizen of Connecticut. Romanella argues that *Oneida Indian Nation v. Oneida County,* 464 F.2d 916 (2d Cir.1972), *rev'd on other grounds,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), stands for the proposition that an Indian tribe is a citizen of the state in which the reservation lies. Thus, according to Romanella, because the Tribe's reservation is located in Connecticut, it is a citizen of Connecticut for diversity purposes. The defendants contend that Romanella has mis-

read *Oneida.* They argue that *Oneida* stands for the proposition that a native American tribe is not a citizen of any state for diversity jurisdiction purposes and, therefore, cannot sue or be sued in federal court based on diversity jurisdiction.

In *Oneida,* the plaintiffs—the Oneida tribes of New York and Wisconsin—sued two New York counties in federal court alleging that the sale of tribal lands violated certain treaties. Rejecting the tribes' claim of federal question jurisdiction, the court examined the tribe's argument that diversity of citizenship existed. Impliedly accepting the tribe's argument that a native American tribe is a citizen of a state within the meaning of section 1332(a), the court focused on the citizenship of the Oneida Nation of New York and posited that the tribe "surely was not a citizen of a state different from New York." *Oneida,* 464 F.2d at 923. It thus concluded that "the Nation's lack of citizenship in a state other than New York ... defeat[ed] diversity jurisdiction." *Id.*

As defendants' counsel conceded at oral argument, the *Oneida* court's discussion is far from clear. Several courts, however, have cited *Oneida* as authority for the proposition that an Indian tribe is not a citizen of any state for diversity jurisdiction purposes and, therefore, that a tribe cannot sue or be sued in federal court based on diversity jurisdiction. *See, e.g., Gaines v. Ski Apache,* 8 F.3d 726, 729 (10th Cir.1993); *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974); *Veeder v. Omaha Tribe of Nebraska,* 864 F.Supp. 889, 898 (N.D.Iowa 1994); *Calvello v. Yankton Sioux Tribe,* 899 F.Supp. 431, 435 (D.S.D.1995). A leading treatise on Indian law also supports these courts' holdings. *See* Felix Cohen, *Handbook on Indian Law,* at 372 (reprint ed. 1988) [hereinafter "Cohen, *Handbook on Indian Law* "].

Romanella has not cited any authority supporting a contrary reading of *Oneida.* Nor has she cited any persuasive authority supporting her position that a native American

---

**2.** The plaintiff does not allege that the Tribe is incorporated as a federal corporation pursuant to 25 U.S.C. § 477 (1988 & Supp.1993).

tribe is a citizen of the state in which its reservation is located.

In short, the court concludes that a native American tribe is not a citizen of a state within the meaning of 28 U.S.C. § 1332 and may not sue or be sued in federal court under the court's diversity jurisdiction.

### B. *Sovereign Immunity*

Even assuming that the Tribe is a citizen of Connecticut for diversity purposes, the court finds that the doctrine of tribal immunity bars this action as to all the defendants.

#### 1. *Tribe*

■ Native American tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories. *See Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (citing *Cherokee Nation v. Georgia,* 5 Pet. 1, 17, 8 L.Ed. 25 (1831)). Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits for damages against a tribe. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (citations omitted).

■ Romanella does not contend that the Tribe has expressly or impliedly waived its immunity from suit or that Congress has abrogated it. Rather, she asserts that the Tribe's sovereign immunity does not extend to activities or areas beyond the reservation's boundaries. To support this argument, Romanella cites *Padilla v. Pueblo of Acoma,* 107 N.M. 174, 754 P.2d 845 (1988), *cert. denied,* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989).

Although the Supreme Court has not addressed the issue directly, two federal circuit courts have held that the doctrine of tribal immunity extends to tribal activities conducted beyond the reservation's borders. *See, e.g., Sac & Fox Nation v. Hanson,* 47 F.3d 1061, 1064–65 (10th Cir.) (affirming district court's conclusion that tribe immune from suit in state court for commercial activities occurring off the reservation), *cert. denied sub nom.,* — U.S. —, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995); *In re Greene,* 980 F.2d 590, 598 (9th Cir.1992) (holding that bankruptcy trustee may not maintain adversary proceeding against tribal business entity for conduct occurring off-reservation), *cert. denied,* 510 U.S. 1039, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994). The court finds the reasoning of *In re Greene,* and its criticism of *Padilla,* persuasive and holds that the Tribe's immunity from suit extends to commercial activities occurring off the reservation.

#### 2. *Hayward and Libby*

■ The doctrine of tribal immunity "extends to individual tribal officials acting in their representative capacity and within the scope of their authority." *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476, 478 (9th Cir.1985); *see, e.g., Tenneco Oil Co. v. Sac & Fox Tribe of Indians,* 725 F.2d 572, 574 (10th Cir.1984). *See also* Cohen, *Handbook on Federal Indian Law,* at 284 ("[I]t has been held that where the tribe itself is not subject to suit, tribal officers cannot be sued on the basis of tribal obligations.") (footnote omitted).

■ Romanella does not allege that the individual defendants acted beyond the scope of their authority as tribal officers. Consequently, her action against the tribal officers is a suit against the tribe. As such, the individual defendants' immunity from suit is coextensive with the Tribe's immunity from suit.

■ At oral argument, Romanella argued for the first time that she has alleged claims against Hayward and Libby in their individual capacities and that dismissal of her claims against those defendants therefore would be inappropriate. She correctly observes that tribe members, even officials, are amenable to suit if the subject of the suit is not related to the officials' performance of official duties. In *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977), for example, the Supreme Court permitted a state court to "adjudicate the rights of the individual defendants," *id.* at 173, 97 S.Ct. at 2621, relating to fishing rights because those defendants, in-

cluding several who were tribal officials, had been acting as fishermen rather than tribal government officers when they had engaged in the challenged activities. *See id.* at 168 & n. 3, 97 S.Ct. at 2619 & n. 3.

Romanella's argument, however, is unsupported by the allegations contained in her complaint. Reviewing the Second Amended Complaint, the court finds that the negligence claims asserted against Hayward and Libby directly relate to their performance of their official duties. Indeed, Romanella alleges that "Hayward was an officer [of the Tribe] and he and/or defendant Libby were responsible for the maintenance of [the parking lot.]" (Second Am.Compl. at 3, ¶ 1.) She then alleges several different ways in which Hayward and Libby were negligent in maintaining the parking lot. (*See id.* at 4, ¶ 4.) Each of these purported negligent acts relate to duties arising from their positions as tribal officials responsible for the maintenance of the parking lot.

In sum, the court concludes that Hayward and Libby are entitled to assert the Tribe's immunity from suit against Romanella's claims.

### CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss [doc. # 16] is GRANTED and the action is DISMISSED in its entirety. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.