HINESBURG SAND & GRAVEL, COMPANY, INC., Plaintiff,

v.

CHITTENDEN SOLID WASTE DISTRICT, William Leach, John Bartlett, James Condos, David Eaton, Thomas Moreau, Constance Plunkett, Charles Schwer, Richard Villamil, Albert "Sonny" Audette, William Stafford, Ruth Taylor, Abraham Waldstein, Frederic Moody, and Anthony Barbagallo, Defendants.

No. 2:95–CV–208.

United States District Court, D. Vermont.

April 3, 1997.

Charles Thomas Shea, Gravel & Shea, Burlington, VT, for plaintiff.

Michael Bradley Clapp, Affolter, Clapp & Gannon, Burlington, VT, for defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

This suit arises out of a condemnation proceeding initiated by Defendant Chittenden Solid Waste District ("CSWD," "the District") against land owned by Plaintiff Hinesburg Sand & Gravel ("HS&G"). HS&G alleges that CSWD and several of its employees and executive officers failed to follow statutory condemnation procedures and thereby violated HS&G's rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. §§ 1983 and 1988; Chapter I, Articles 2, 4 and 9 of the Vermont Constitution; and under Vermont common law. Pending before the Court is Defendants' Motion to Dismiss.

### I. Factual Background

#### A. Allegations of the Complaint

This suit is one skirmish in an ongoing battle between HS&G and CSWD over a plot of land in Williston, Vermont. The Complaint alleges the following relevant facts which, for the purposes of this motion, the Court assumes to be true.

HS&G is a privately owned Vermont corporation with its principal place of business in Hinesburg, Vermont. HS&G mines, processes, and sells aggregate products such as sand and gravel. Among the properties owned by HS&G and used for mining purposes is a 76–acre plot in Williston known as the Redmond Pit. The Redmond Pit contains two types of sand deposits, both of which are mined and sold by HS&G: a common sand, and a coarser product known as "Redmond Sand."

CSWD is a union municipal district organized in 1987 under Vt.Stat.Ann. tit. 24, §§ 4861–4868 (1992), which seeks to condemn the Redmond Property in order to locate a waste management facility on the property. On August 14, 1989, Paul Craven, then an employee of CSWD, spoke with Paul Casey, President of HS&G, and explained that CSWD wanted to locate a landfill on the Redmond Property. Mr. Casey expressed his unwillingness to part with the property, but agreed to meet with Mr. Craven. Two days later, when Mr. Craven knew Mr. Casey would be out of town, Mr. Craven entered onto the Redmond Property without HS&G's permission. Upon discovery, he was removed from the property.

Soon thereafter, Defendant Albert "Sonny" Audette, a member of the Board and Treasurer of CSWD, met with Mr. Casey and told him that the CSWD Board had already selected the Redmond Property as the location for the landfill. He told Mr. Casey that if he did not negotiate a purchase price with CSWD, the District would obtain the property through condemnation. This statement was made despite the fact that the District did not have condemnation authority until June 28, 1991. Mr. Casey was also contacted by Michael Smith, then interim manager of CSWD, who told Mr. Casey that the District would "play hardball" if Mr. Casey did not agree to sell his property to CSWD.

On March 25, 1992, the CSWD Board voted to adopt a resolution to condemn the Redmond Property if HS&G did not negotiate a sale of the property to CSWD within 30 days.

Pursuant to Vermont law, a Citizens Advisory Committee ("CAC") was established to create the criteria to be used in siting the landfill. CAC retained Roy F. Weston, Inc. ("Weston"), an environmental consulting company, to conduct the siting process. According to HS&G, CSWD participated in the siting process, but had already decided upon the Redmond Property.

The Weston criteria specified that only properties of greater than 100 acres should

be considered, but CSWD insisted that the 76–acre Redmond Property be included. Even so, upon completion of "Phase One" of the siting process, Weston selected a property in Essex, Vermont, referred to as "Site 22A," as the best potential landfill site. CSWD employees reprimanded Weston for its report, developed its own siting criteria such that the Redmond Property would prevail, and convinced Weston to accept and support CSWD's conclusions. As part of its report, CSWD estimated the cost of acquisition of the Redmond Property at $700,000, despite the fact that HS&G had informed CSWD that its estimated losses would be in excess of $7 million.

In preparation for its acquisition of the Redmond Property, CSWD has purchased adjacent and other nearby properties, and in some cases has paid almost twice the appraised market value for those properties.

On June 30, 1992, the CSWD Board held a public hearing to consider the condemnation of the Redmond Property. HS&G's attorney spoke at the hearing, but the Board ignored the information there presented and made erroneous findings as part of a resolution passed on that date. Those findings included statements that CSWD followed the siting criteria of Weston and that the District had considered two sites other than the Redmond Property and found those sites to be inadequate. In addition, the resolution stated that the compensation to be paid to HS&G was $400,000 less the value of any sand extracted from the property between October 9, 1990 and the date the District acquires the property.

### B. Statutory Framework for Condemnation

The Landfill Condemnation Statute grants solid waste management districts such as CSWD the authority to acquire property for landfill and other solid waste facilities by eminent domain any time after June 28, 1991. Vt.Stat.Ann. tit. 24, § 2299a. In granting this power to the districts, the Vermont Legislature established a fixed procedure for its exercise.

First, the district must hold a noticed public hearing, to be conducted by the "legislative body" of the District, "for the purpose of receiving suggestions and recommendations from the public" regarding a proposed condemnation. Id. at § 2299c(b). Next, the legislative body of the district votes to adopt a resolution "setting forth the necessity for the taking and the compensation to be paid." Id. at § 2299c(a). Once this resolution is passed, the district must petition the superior court of the county in which the property that the district proposes to condemn lies, describing the property, stating why the district is unable to acquire the property without condemnation, and why its acquisition is necessary. Id. at § 2299d(a).

The superior court then holds a hearing and hears from any party wishing to participate. If any aggrieved party objects to the necessity of the proposed taking, the court conducts an evidentiary hearing on the issue of necessity, with the burden on the petitioner to establish necessity by a fair preponderance of the evidence. Id. at § 2299e(a). Any party may appeal the superior court's necessity determination to the Vermont Supreme Court. Id. at § 2299e(b). Following a necessity determination, any party with an interest in the property may petition the superior court for a reassessment of the district's compensation determination. Id. at § 2299f(a). The compensation decision also may be appealed to the Supreme Court.

### C. Pending State Court Litigation

Following the June 30, 1992 public hearing and CSWD's adoption of a resolution stating its intent to take the Redmond Property, CSWD petitioned the Chittenden Superior Court. HS&G vigorously opposed the condemnation, and challenged both the necessity and compensation determinations made by the District. The Superior Court, per Judge Wright, held that CSWD had failed to comply with certain statutory factors for condemnation and for setting forth the compensation to be paid, including the valuation criterion of § 2299b(2) of business losses to the landowner, and the extent to which HS&G's business yield would be lessened by the condemnation. In so doing, the court held, CSWD had failed to set forth the "compensation to be paid" to HS&G, as required by § 2299c(a) "when read

together with §§ 2299b(2) and 2299f." *In re: Acquisition by Chittenden Solid Waste Dist. of Certain Property Interests,* No. S–1054–92–CnC, slip op. (Chittenden Super.Ct., March 10, 1994).

The Vermont Supreme Court reversed the Superior Court on appeal. *In re Chittenden Solid Waste Dist.,* 163 Vt. 185, 657 A.2d 197 (1995). The court held that the Superior Court had improperly considered the statutory factors discussed above, because the public hearing held on June 30, 1992 was an " 'exploratory and informative' " non-judicial or quasi-judicial action, not subject to judicial review. 163 Vt. at 189–90, 657 A.2d at 199–200 (citation omitted). Moreover, the court held that the necessity and just compensation determinations required by the Landfill Condemnation Statute are two entirely separate proceedings, and that the just compensation hearing cannot be commenced until the necessity hearing has concluded. 163 Vt. at 189, 657 A.2d at 200. The Superior Court therefore erred in considering at the necessity hearing CSWD's alleged procedural failures regarding its calculation of the compensation to be paid to HS&G. *Id.* The case was remanded to the Superior Court.

On remand, the Superior Court, per Judge Martin, held that CSWD had met its burden of proving necessity. *In re: Acquisition by Solid Waste Dist. of Certain Property Interests by Eminent Domain,* No. S–1054–92–CnC, slip op. (Chittenden Super.Ct., January 3, 1997). HS&G has appealed this decision, and the compensation hearing has therefore been stayed pending the appeal.

## II. Discussion

### A. Rule 12(b) Standards

Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and alternatively under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

On a motion to dismiss for lack of subject matter jurisdiction, the complaint is construed "broadly and liberally, in conformity with the principle set forth in Rule 8(f) that pleadings be so construed as to do substantial justice." *Romanella v. Hayward,* 933 F.Supp. 163, 164–65 (D.Conn.1996); 5A C. Wright & A. Miller, Federal Practice & Procedure § 1350, at 218–219 (1990 & Supp. 1991) (hereinafter "Wright & Miller"). In addition, the court must accept as true all material factual allegations in the Complaint. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern.,* 968 F.2d 196, 198 (2d Cir.1992). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.*

With regard to a Rule 12(b)(6) motion, the Court is to consider the legal sufficiency of the claim as stated in the complaint, and is not to weigh facts underlying the claim or the merits of the case. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); Wright & Miller at § 1356. The complaint must not be dismissed "unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Goldman,* 754 F.2d at 1065 (quoting *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957)). Moreover, the complaint must be read with "great generosity." *Yoder v. Orthomolecular Nutrition Inst. Inc.,* 751 F.2d 555, 558 (2d Cir.1985) (citing *Conley,* 355 U.S. at 47–48, 78 S.Ct. at 102–03). Taking Plaintiff's allegations as true, the Court must construe the Complaint in the light most favorable to the Plaintiff, and must draw all inferences in Plaintiff's favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Yoder,* 751 F.2d at 562.

### B. Takings Claim

HS&G alleges four counts against Defendants. In Count I of the Complaint, HS&G alleges that CSWD failed to follow statutorily required procedures in siting the proposed landfill on the Redmond Property, and that the expenses that HS&G incurred in attorney's fees and engineering and consulting costs in response to CSWD's unlawful conduct constitute "property" which was in effect taken by CSWD. HS&G seeks "just compensation" under the Fifth Amendment to the U.S. Constitution, and under Chapter I, Article 2 of the Vermont Constitution.

■ CSWD initially challenged the ripeness of HS&G's taking claim, based on an understanding of the Complaint as alleging that HS&G's costs were recoverable as part of the compensation owed it for the taking of the Redmond Property. If this were the case, CSWD argues, then HS&G's claim would be unripe under the rule of finality of *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), which provides that a federal court may not hear a just compensation claim until all available state procedures have been exhausted. In the instant case, CSWD notes, state proceedings are ongoing. However, in its subsequent briefs and at oral argument, HS&G made clear that it does not seek in this action compensation for the taking of its property, but instead views the expenditures it made in opposing CSWD's actions as the property taken. Although the Complaint appears to support CSWD's interpretation, a liberal construction of the Complaint permits HS&G's argument as well. Favoring this more liberal construction, the Court finds that the taking claim is ripe for review. Dismissal under Rule 12(b)(1) is therefore inappropriate.

■ Although not unripe, Count I fails to state a claim for which relief can be granted. To state a claim under the Takings Clause, a plaintiff must have a protectible property interest. *Story v. Green,* 978 F.2d 60, 62 (2d Cir.1992). While most takings claims involve land interests, personal property—including money—may in some circumstances constitute a property interest for takings purposes. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Assuming without deciding that HS&G has properly alleged a property interest here, Count I of the Complaint must be dismissed because there has been no taking under the Fifth Amendment of the U.S. Constitution or Chapter I, Article 2 of the Vermont Constitution.

■ In essence, HS&G's claim is that CSWD's conduct in the landfill siting process necessitated HS&G to expend substantial sums of money opposing CSWD, and therefore constituted a regulatory taking. A regulatory taking exists if a government regulation of property "goes too far," such that its effect is a total or near-total deprivation of the owner's interest in the subject matter. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). Although the Supreme Court has noted that the question of whether a particular government regulation is a taking turns upon the particular circumstances of each case, *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958), it has set forth three factors to be given special consideration: "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Ruckelshaus,* 467 U.S. at 1005, 104 S.Ct. at 2874 (quoting *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 83, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741 (1980)); *see also Allen v. Cuomo,* 100 F.3d 253, 262 (2d Cir.1996). It is upon the first of these factors that HS&G's claim founders.

■ A fundamental requirement for any taking is that the challenged governmental action create legal compulsion. This nearly tautological principle is evident in a number of cases involving price regulation of particular markets. *See, e.g., Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, (1944); *Garelick v. Sullivan,* 987 F.2d 913 (2d Cir.1993), *cert. denied sub nom Garelick v. Shalala,* 510 U.S. 821, 114 S.Ct. 78, 126 L.Ed.2d 47 (1993); *Meriden Trust and Safe Deposit Co. v. F.D.I.C.,* 62 F.3d 449 (2d Cir.1995). In *Bowles,* for example, the Supreme Court held that a rent regulation ordinance that, by its terms, did not require landlords to remain in the rental business, did not constitute a taking, and plaintiff landlords' voluntary participation in the market did not render it a taking. *Garelick* and *Meriden Trust* present similar circumstances of plaintiffs (anesthesiologists and banks, respectively) "voluntarily subjecting [themselves] to a known obligation." *Meriden Trust,* 62 F.3d at 455. Clearly, however, the

legal compulsion requirement is not limited to cases involving heavily regulated markets.

*Webb's Fabulous Pharmacies* provides further support for the proposition that there is no taking without legal compulsion. In that case, a state court sought to retain the interest earned on an interpleader fund deposited with the court pending the outcome of the suit. The Supreme Court held the state action to be a taking because it was "a *forced contribution* to general governmental revenues, and it [was] not reasonably related to the costs of using the courts." 449 U.S. at 163, 101 S.Ct. at 452 (citations omitted) (emphasis added). The question thus presented in the present case is whether CSWD's conduct in the landfill siting process exacted a "forced contribution" from HS&G.

HS&G was under no compulsion to hire attorneys, engineers, or consultants at any time during the siting or condemnation processes. As the Vermont Supreme Court has made clear, the public hearing held on June 30, 1992 was " 'exploratory and informative' " and " 'designed to afford the public and landowners the privilege to participate in the administrative decision of the board.' " *In re Chittenden Solid Waste District*, 163 Vt. at 190, 657 A.2d at 200 (quoting *State Highway Bd. v. Hazen*, 126 Vt. 46, 49, 221 A.2d 579, 581 (1966)) (emphasis added). Moreover, the Landfill Condemnation Statute places the burden of proof at a necessity hearing exclusively on the District. Vt.Stat.Ann. tit. 24, § 2299e(a). The statute states further that "[n]o presumptions shall attend the petitioner's determination of necessity." *Id.* Thus, the statutory framework establishes legal compulsion for the District only, and though it allows participation by affected landowners such as HS&G, such participation is purely voluntary.

HS&G's predicament is analogous to that of a criminal defendant against whom charges are brought. Although the charges may prompt the defendant to expend considerable sums of money in mounting his or her defense, the defendant is not required by law to do so—as in the instant case, the burden of proof rests on the opposing party—and therefore there is no taking. HS&G's allegation of bad faith on the part of CSWD does not magically convert its situation into a taking. Rather, bad faith is wholly irrelevant to the analysis. The example of the criminal defendant is again instructive in this regard. Even if the charges against the defendant were brought in bad faith, and ultimately were dropped or resulted in an acquittal, the defendant would not have a taking claim for his or her litigation costs. This is not to say that the defendant is entirely without remedy, but simply that the remedy is not a just compensation claim. The defendant would have a remedy in tort for malicious prosecution, and it appears that HS&G could bring a similar claim against CSWD.

HS&G has argued that its taking claim is permissible under *United States v. Bodcaw Co.*, 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979). *Bodcaw* states that as a general rule, "indirect costs to the property owner caused by the taking of his [or her] land are not part of the just compensation to which he [or she] is constitutionally entitled." 440 U.S. at 203, 99 S.Ct. at 1066–67. Thus, " '[a]ttorneys' fees and expenses are not embraced within just compensation.' "*Id.* (quoting *Dohany v. Rogers*, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930)).[1] The Court notes, however, that there "may be" exceptions to this rule, as in the case of *United States v. Lee*, 360 F.2d 449 (5th Cir.1966). In *Lee*, the court held that the cost of a land survey should be included in just compensation awarded for the taking of the plaintiff's land because the government had failed to accurately state the amount of land it sought to condemn. In *Bodcaw*, the Supreme Court characterized *Lee* as involving "misrepresen-

---

1. Although the inclusion of incidental costs is not required by the Constitution, nor is it proscribed. As the Supreme court stated in *Bodcaw*, "such compensation is a matter of legislative grace rather than constitutional command." 440 U.S. at 204, 99 S.Ct. at 1067. Congress has exercised its discretion to provide for the recovery of costs, including "attorney, appraisal, and engineering fees" incurred because of condemnation proceedings if the condemnation is dismissed as unauthorized, the government abandons the condemnation, or the property owner recovers compensation through an inverse condemnation proceeding under the Tucker Act. 28 U.S.C. § 4654; *Bodcaw*, 440 U.S. at 204, 99 S.Ct. at 1067.

tation" on the part of the government as to the amount of land to be taken. 440 U.S. at 203, 99 S.Ct. at 1066–67. HS&G argues that the present case fits within this exception, while CSWD disputes whether *Bodcaw* creates a general "misrepresentation" exception.

Regardless of whether *Lee* was correctly decided,[2] and regardless of whether a "misrepresentation" exception exists, *Bodcaw* is of no avail to HS&G for the simple reason that there was a taking in *Bodcaw* and in the present case there is not. The specific issue presented in both *Bodcaw* and Lee was whether attorney's fees, surveyor's costs and similar expenses should be *included* in just compensation for the taking of particular property. The costs in question were attendant to a taking of property, and did not constitute a taking in themselves, as HS&G argues here. Thus, *Bodcaw* and *Lee* address the parameters of just compensation, but not of the initial requirement that there be a taking. *Bodcaw* would benefit HS&G if it were arguing that it were entitled to attorney's fees and engineering and consulting costs as part of the just compensation due for the taking of the Redmond Property. However, HS&G has expressly avowed that it is not advancing such an argument in the present case. Even if it were, the argument would not be ripe until the just compensation hearing in the state court was completed.

In summary, HS&G has failed to state a takings claim for which relief can be granted. CSWD's motion to dismiss Count I of the Complaint is therefore granted pursuant to Rule 12(b)(6).

## C. Due Process Claims

In Count II of the Complaint, HS&G alleges that the District's conduct during the siting process and at the June 30 public hearing violated their due process rights under the Fourteenth Amendment of the U.S. Constitution and under Chapter I, Article 4 of the Vermont Constitution. Specifically, Plaintiff alleges that the District failed to comply with the statutory requirements set out in § 2299c, thereby violating HS&G's procedur-

al due process rights, and that the District's conduct was arbitrary and irrational, in violation of HS&G's substantive due process rights.

CSWD initially contended that Plaintiff's due process claims were unripe, but as with the takings claim, this argument was based on an interpretation of the Complaint according to which HS&G's alleged injury—the costs of opposing CSWD in the siting process—were derivative of a taking of the Redmond Property. As discussed above, HS&G's claims in this case are made independent of the Redmond Property taking, and therefore the finality requirement of *Williamson* does not render HS&G's due process claims unripe.

▮▮▮▮ Ultimately, HS&G's due process claims fail for much the same reason that its takings claim did. As with the Takings Clause, the Due Process Clause of the Fourteenth Amendment protects against state deprivations of only protectible property interests without due process of law. *Story v. Green,* 978 F.2d at 62. Even assuming, *arguendo,* that HS&G has a protectible property interest in the money it spent on attorneys, engineers, and consultants, however, there has been no deprivation, just as there was no taking. Defects in the landfill siting process, or CSWD's arbitrary conduct, if any, do not affect HS&G's property interest in its money. Indeed, HS&G's decision to expend its own funds to challenge CSWD was entirely voluntary. In effect, HS&G brought the "deprivation" of its money upon itself, free of legal compulsion or government coercion.

Because Plaintiff has not suffered a deprivation of a protectible property interest, Count II of the Complaint fails to state a claim for which relief can be granted, and is therefore dismissed.

## D. Equal Protection Claim

HS&G's third constitutional claim is that CSWD improperly targeted HS&G in siting the proposed landfill on the Redmond Property, in violation of Plaintiff's rights to equal

---

**2.** The Supreme Court did not uphold the decision in *Lee,* but instead stated that "even if correctly decided," *Lee* presented a factually distin-

guishable situation from the case at bar, in which there was no allegation of "misrepresentation." 440 U.S. at 203 n. 2, 99 S.Ct. at 1067 n. 2.

protection under the Fourteenth Amendment of the U.S. Constitution and Chapter I, Article 9 of the Vermont Constitution.

 Where a classification involves neither fundamental rights nor a suspect class, it survives equal protection scrutiny if it is rationally related to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). HS&G claims that it was treated differently than property owners within the geographic area covered by CSWD. Thus, rational basis scrutiny applies.

Although the rational basis test is in most cases easily satisfied, this is not the time for the Court to adjudge CSWD's proffered justification for its conduct during the siting process. Rather, on motion to dismiss, the Court is to consider whether the allegations of the Complaint, if taken as true, state an actionable claim. *Goldman v. Belden,* 754 F.2d at 1067. The Court finds that the facts alleged by Plaintiff are legally sufficient to survive CSWD's motion to dismiss. Specifically, if HS&G can prove that the District arbitrarily and irrationally acted to "oppress and coerce" HS&G into accepting "less than full and fair compensation" for its land, as the Complaint alleges, such proof might well establish an equal protection violation.

Because HS&G has stated a claim for which relief may be granted, Defendants' motion to dismiss Count III of the Complaint is denied.

### E. Common Law Abuse of Statutory Condemnation Procedures

HS&G's last claim, set forth in Count IV of the Complaint, alleges a state common law abuse of the condemnation procedures required by § 2299. CSWD sought to dismiss this Count on the assumption that all of the federal law claims would also be dismissed, thus depriving the Court of pendent jurisdiction over the state law count. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), as codified in 28 U.S.C. § 1367. However, since the Court has denied CSWD's motion to dismiss Plaintiff's equal protection claim, it retains pendent jurisdiction over Count IV.

Defendants' motion to dismiss Count IV is therefore denied.

### III. Conclusion

Based on the foregoing analysis, Defendants' Motion to Dismiss (Paper No. 4) is hereby GRANTED in part and DENIED in part, as follows: the motion is granted as to Counts I and II, and denied as to Counts III and IV.