**Jeff WORRALL, Plaintiff,**

**v.**

**MASHANTUCKET PEQUOT GAMING ENTERPRISE d/b/a Foxwoods Resort Casino, Defendant.**

**No. Civ.A.3:00CV15(CFD).**

United States District Court, D. Connecticut.

Feb. 2, 2001.

Christopher M. Uhl, Worchester, MA, for plaintiff.

Elizabeth Conway, Mashantucket Pequot Tribal Nation, Office of Legal Counsel, Mashantucket, CT, for defendant.

### *RULING*

DRONEY, District Judge.

### I. *Introduction*

The plaintiff in this negligence action seeks damages, costs, and attorney's fees for injuries sustained at the Foxwoods Resort Casino when the chair in which he was sitting collapsed, causing personal injuries. He claims that the Court has di-

versity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), and alternatively, § 1332(a)(4).

Pending is a motion to dismiss filed by the defendant, the Mashantucket Pequot Gaming Enterprise ("Gaming Enterprise") [Doc. # 11]. In its motion, the Gaming Enterprise argues under Fed.R.Civ.P. 12(b)(1) that this action should be dismissed for two reasons: (1) the Court lacks subject matter jurisdiction because there is no diversity between the parties, and (2) the defendant is entitled to tribal sovereign immunity which bars this action.

## II. *Standard of Review*

 Once challenged, the burden of establishing a federal court's subject matter jurisdiction under Rule 12(b)(1) rests on the party asserting jurisdiction. *See Romanella v. Hayward,* 933 F.Supp. 163, 164–65 (D.Conn.1996) (citing *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942)). "In deciding a Rule 12(b)(1) motion, the court construes the complaint broadly and liberally in conformity with the principle set out in Rule 8(f), Fed.R.Civ.P., 'but argumentative inferences favorable to the pleader will not be drawn.'" *Romanella,* 933 F.Supp. at 164–65 (D.Conn.1996) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at 218–19 (1990 & Supp.1991)). The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction. *See id.*

## III. *Discussion*

### I. Subject matter jurisdiction

A district court has jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are:

(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

In his complaint, the plaintiff claims that pursuant to § 1332(a)(2), there is diversity of citizenship between Worrall, a citizen of Massachusetts, and the Gaming Enterprise, "a corporation with its principal place of business in Connecticut." He argues that the defendant is a corporation because "its sole purpose is to make money" and should be considered a citizen of a foreign state because it is located on an Indian reservation. In the alternative, the plaintiff claims that this court has diversity jurisdiction under § 1332(a)(4) because "[t]he business also may be a sovereign entity." In other words, he argues that the Gaming Enterprise could be either a foreign state or a citizen of a foreign state because it is situated on an Indian reservation. In contrast, the defendant argues that the Gaming Enterprise can be considered neither a citizen nor a foreign state because it is an arm of the tribal government, which is not subject to diversity jurisdiction.

 "[A] native American tribe is not a citizen of a state within the meaning of 28 U.S.C. § 1332 and may not be sued in federal court under the court's diversity jurisdiction." *Romanella v. Hayward,* 933 F.Supp. 163, 167 (D.Conn.1996), *aff'd,* 114 F.3d 15 (2d Cir.1997) (citing *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 17–18, 8 L.Ed. 25 (1831)). Similarly, "the Supreme Court long-ago held that an Indian tribe is not a foreign state." *Id.* at 167. These principles extend to tribal entities that are arms of the tribe. *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 27 (2d Cir.2000) ("We see no reason why the Authority (an arm of the Tribe, not separately incorporated) should be treated any differently [than the Tribe itself] for jurisdictional purposes."); *cf. Gaines v. Ski Apache,* 8 F.3d 726, 729 (10th Cir.1993) (holding that

while a corporate tribal entity may be subject to diversity jurisdiction, a constitutional tribal entity could not).

The evidentiary record now before this court indicates that the Gaming Enterprise is an arm of the Mashantucket Pequot Tribe (the "Tribe") with which it is affiliated. First, Title IV of the Mashantucket Pequot Tribal Laws, entitled "Tort Claims," states that "[t]he Gaming Enterprise is an arm of the Tribal government and shares the sovereign immunity of the Tribe." *See* Def.'s Exh. A. In addition, Jackson T. King, Jr., general counsel for the Mashantucket Pequot Tribe, states in his affidavit that the Gaming Enterprise was established as an arm of the Tribal government to conduct the tribal gaming operations. *See* Doc. # 13. King also explains, "All operations and business of the Gaming Enterprise are subject to the paramount authority of the Tribal Council, which maintains full oversight and control. . . . The Gaming Enterprise is not and never had been separately incorporated under federal, state or tribal law." *Id.* Based on this evidence,[1] the Gaming Enterprise is an arm of the Mashantucket Pequot Tribe. Therefore, like the Tribe, it can be considered neither a citizen of a state nor a foreign state for the purposes of diversity jurisdiction under § 1332(a). Further, given that a tribe is not a foreign state, a tribal entity cannot be a citizen of that foreign state.[2] Consequently, this court does not have subject matter jurisdiction under § 1332(a).[3]

## II. Tribal sovereign immunity

Even if this Court has subject matter jurisdiction pursuant to § 1332(a), the doctrine of tribal immunity bars this action.

**1.** The plaintiff has not offered any evidence to the contrary.

**2.** The plaintiff cites *Gaines v. Ski Apache*, 8 F.3d 726 (10th Cir.1993), for the proposition that a tribal entity is a citizen of a foreign state. However, *Gaines* merely holds that corporate entities chartered pursuant to tribal laws may be considered citizens of states for

■■ Indian tribes are "domestic dependent nations that exercise inherent sovereign authority over their members and territories." *Romanella,* 933 F.Supp. at 167. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived immunity." *Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.,* 523 U.S. 751, 754, 758, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *see also Romanella,* 933 F.Supp. at 167 ("Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits . . . against a tribe."). Such immunity covers certain commercial activities occurring off a tribe's reservation. *See Romanella,* 933 F.Supp. at 167; *cf. Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.,* 523 U.S. 751, 755, 758, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) (discussing exceptions to tribal sovereign immunity while declining to distinguish between a tribe's commercial and non-commercial activities). In addition, tribal sovereign immunity may extend to entities that are agencies of the tribe. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 358 (Feb. 28, 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) ("It may be that the district court will conclude, upon further analysis, that the museum is an agency of the Tribe and, as such, is entitled to benefit from the Tribe's immunity."); *see also Mashantucket Pequot Gaming Enter. v. CCI, Inc.,* 1994 WL 373122, No. 103729 (Conn.Super.1994) (holding that the Gaming Enter immune from a suit under contract law); *Ninigret Dev. Corp.,* 207 F.3d at 29 ("The Authority, as an arm of the Tribe, enjoys the full

purposes of diversity jurisdiction. *See* 8 F.3d at 729. It does not discuss whether a tribal entity may be a citizen of a foreign state.

**3.** As all the claims involved arise under state law, there also can be no federal question jurisdiction under 28 U.S.C. § 1331.

extent of the Tribe's sovereign immunity.").

■ The defendant argues that as an arm of the tribal government, the Gaming Enterprise is entitled to the same immunity which protects the tribe itself. The plaintiff contends that the "thread binding the concept of sovereign immunity to Indian Tribes is very fine indeed," and notes that by continuing to apply this doctrine, tribes are allowed broader immunity than that enjoyed by federal, state, and foreign governments.[4]

Based on the record before the Court, the Court concludes the Gaming Enterprise is entitled to the same tribal sovereign immunity that protects the Tribe itself.[5] As discussed above, the evidence presented by the defendant indicates that the Gaming Enterprise is an economic subdivision of the Tribe that was established as an arm of the tribal government. Further, given the close relationship between the Gaming Authority and the Tribe under Mashantucket Pequot Tribal Laws, any judgment against the Gaming Authority presumably would be satisfied with funds from the Tribe itself. *See Pikulin v. City Univ. of New York,* 176 F.3d 598, 600 (2d Cir.1999) (stating that one of the factors to be considered in determining whether a university can be considered an arm of the state entitled to sovereign immunity is whether the state would be responsible for satisfying any judgment that might be satisfied against the defendant entity). In addition, there is significant supervision of the Gaming Enterprise by the Tribal Council, which, according to Mr. King's affidavit, "maintains full oversight and control." *See id.* (considering the degree of supervision exercised by the state over the

defendant entity in determining whether a university is entitled to sovereign immunity). Based on these factors, the Gaming Authority is an agency of the Tribe entitled to benefit from the Tribe's sovereign immunity. As a result, this action must be barred.

### IV. *Conclusion*

For the foregoing reasons, the defendant's motion to dismiss [Doc. # 11] is granted. The Clerk is directed to close this case.

---

4. He also claims that a dismissal of this case would deny the plaintiff the opportunity to recover any relief for his injuries, and suggests that it is unfair that the Mashantucket tribe "does absolutely nothing to inform nonmembers entering their lands that all ideas and concepts of the legal and judicial systems of the United States and the State of Connecticut no longer apply." In response, the defendant points out that the Tribe has waived

immunity for certain tort claims in its tribal courts, and as a result, the plaintiff would not be left without recourse.

5. The Gaming Enterprise has not waived its immunity from suit in federal courts, and there also is no evidence that Congress abrogated that immunity.